IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA

RT-DESTIN ASSOCIATES, LLC,
A FLORIDA LIMITED LIABILITY
COMPANY,

      Plaintiff,

v.                                                                              CIVIL ACTION NO. _____

NEXPOINT REAL ESTATE
ADVISORS, L.P., A DELAWARE
LIMITED PARTNERSHIP, AND
LAWYERS TITLE COMPANY, A
CALIFORNIA CORPORATION,

      Defendants.

## COMPLAINT FOR BREACH OF CONTRACT, DECLARATORY JUDGMENT, AND ASSOCIATED INJUNCTIVE RELIEF

Plaintiff RT-Destin Associates, LLC ("Seller"), sues Defendants Nexpoint Real Estate Advisors, L.P. ("Purchaser"), and Lawyers Title Company ("Escrow Company"), and alleges as follows:

1. This is an action that arises out of an agreement by Purchaser to purchase from Seller an Embassy Suites hotel property and related assets (the "Hotel") located in Destin, Florida.

2. The parties' purchase and sale agreement is memorialized in three (3) documents: (a) an "Agreement For Sale And Purchase Of Hotel Embassy Suites Destin, Florida By and Between RT-Destin Associates, LLC, a Florida limited liability company ("Seller") and Nexpoint Real Estate Advisors, L.P., a Delaware limited partnership ("Purchaser")" dated September 5, 2019 (the "Original Agreement"); (b) a "Restatement And

Amendment To Agreement For Purchase And Sale Of Hotel" dated November 27, 2019 (the "First Amendment"); and (c) a "Second Amendment To Agreement For Purchase And Sale Of Hotel" dated February 26, 2020 (the "Second Amendment"). Collectively, the Original Agreement, the First Amendment, and the Second Amendment shall be referred to herein as the "Purchase Agreement." Upon information and belief, Purchaser and Escrow Company both possess fully executed copies of the documents comprising the Purchase Agreement, including the Original Agreement, the First Amendment, and the Second Amendment. Because the Purchase Agreement contains confidential terms, copies of the Original Agreement, the First Amendment, and the Second Amendment are not attached hereto.

## PARTIES

3. Seller is a Florida limited liability company with its principal place of business located at One Executive Boulevard, Yonkers, New York 10701. Seller owns the Hotel that is the subject of the Purchase Agreement.

4. Upon information and belief, Purchaser is a Delaware limited partnership with its principal place of business located at 300 Crescent Court, Suite 700, Dallas, Texas 75201. Pursuant to the Purchase Agreement, Purchaser agreed to purchase the Hotel from Seller upon the terms and conditions set forth in the Purchase Agreement.

5. Upon information and belief, Escrow Company is a California corporation with its principal executive office located at 4400 MacArthur Blvd., Suite 200, Newport Beach, California 92660. Escrow Company agreed to perform certain escrow and related services pursuant to the Purchase Agreement.

**JURISDICTION AND VENUE**

6. The amount in controversy in this action, without interest and costs, exceeds $75,000.

7. Additionally, this case is between citizens of different states. Complete diversity of citizenship exists between Plaintiff (Seller) and Defendants (Purchaser and Escrow Agent) under 28 U.S.C. § 1332.

8. Seller is a citizen of New York, Connecticut, Louisiana, and Delaware for diversity jurisdiction purposes.  Seller is a limited liability company and its current members are Allan V. Rose, an individual who is a citizen of New York; John S. Turner, Jr., an individual who is a citizen of Louisiana; AVR Destin Hotel Corp., a Delaware corporation with its principal place of business located at One Executive Boulevard, Yonkers, New York 10701; Plainview Hotel Corp., a New York corporation with its principal place of business located at One Executive Boulevard, Yonkers, New York 10701; and KEG Trust, a trust formed under the laws of Louisiana.  The current beneficiaries of KEG Trust are Edwina Bagwell Friedman, an individual who is a citizen of Louisiana, Elizabeth C. Friedman Edwards, an individual who is a citizen of Connecticut, Gregory D. Friedman, an individual who is a citizen of Louisiana, and James Lee Friedman, an individual who is a citizen of Louisiana.

9. Upon information and belief, Purchaser is not a citizen of New York, Connecticut, Louisiana, or Delaware for diversity jurisdiction purposes because none of its general or limited partners are citizens of those states.

10. Upon further information and belief, because Escrow Company is incorporated and maintains its principal executive office in California, Escrow Company is a citizen of California for diversity jurisdiction purposes.

11. Because this case involves a dispute between citizens of different states and the amount in controversy exceeds the amount stated in 28 U.S.C. § 1332, this Court possesses diversity jurisdiction over this action under 28 U.S.C. § 1332.

12. Further, this Court possesses personal jurisdiction over Purchaser.  As alleged below, Purchaser breached the Purchase Agreement regarding the sale and purchase of the Hotel, which is located in this District.  Additionally, Section 17.11 of the Purchase Agreement expressly provides that any action, suit, or proceeding arising out of the Purchase Agreement shall be brought in a United States District Court in Florida and that the parties submit to the jurisdiction of such Court.

13. This Court also possesses personal jurisdiction over Escrow Company.  As alleged below, Escrow Company was and is required to perform obligations under the Purchase Agreement regarding the sale and purchase of the Hotel, which again is located in this District.  Additionally, as noted above, Section 17.11 of the Purchase Agreement expressly provides that any action, suit, or proceeding arising out of the agreement shall be brought in a United States District Court in Florida and that the parties submit to the jurisdiction of such Court.

14. Venue is proper in this Court.  This action arises out of the Purchase Agreement regarding the sale and purchase of property located in this District.  Additionally, Section 17.11 of the Purchase Agreement expressly provides that a Florida United States District Court is the

most convenient forum for resolution of any action relating to the Purchase Agreement and waives any right to object to venue in such a Court.

## THE PURCHASE AGREEMENT AND PURCHASER'S DEFAULT

15. Seller, Purchaser, and Escrow Company entered into the Original Agreement on or about September 5, 2019. Pursuant to the Original Agreement, Seller agreed to sell and Purchaser agreed to purchase the Embassy Suites Hotel owned by Seller and located at 570 Scenic Gulf Drive, Destin, Florida, as well as certain specified fixtures and tangible personal property, operating equipment, consumables, equipment, and miscellaneous hotel assets. Additionally, Escrow Company agreed to perform the escrow and related functions specified in the Original Agreement.

16. Subsequently, Seller and Purchaser reinstated and amended the Original Agreement pursuant to the First Amendment on or about November 27, 2019. Among other things, the First Amendment reinstated the Original Agreement as amended by the First Amendment, modified the closing date for the transaction, required Purchaser to make an additional deposit by December 2, 2019, reduced the purchase price for the transaction, and provided that Purchaser would assume an existing mortgage loan on the Hotel if approved by the mortgage lender. The First Amendment did not alter the contractual obligations of Escrow Company.

17. On or about February 26, 2020, Seller and Purchaser further amended the Original Agreement (as previously amended by the First Amendment) pursuant to the Second Amendment. Among other things, the Second Amendment again modified the closing date for the transaction, provided that Purchaser would no longer be assuming the existing mortgage

loan on Hotel, required that the existing loan be "Defeased" pursuant to provisions of the existing mortgage loan, and provided that Purchaser was responsible for paying all Defeasance Costs (including any deposit therefore) associated with the required Defeasance when such sums became due.[1]  Again, as with the First Amendment, the Second Amendment did not change the contractual obligations of Escrow Company.

18.  Pursuant to Sections 3.1(a) and (b) of the Purchase Agreement, Purchaser deposited a total of $1,900,000.00 (the "Deposit") with Escrow Company, which was comprised of an initial deposit of $400,000.00 and an additional deposit of $1,500,000.00. Section 3.2 of the Purchase Agreement requires Escrow Company to hold and disburse the Deposit in accordance with the terms and conditions of the Purchase Agreement.  Escrow Company is required to invest the Deposit in a federally insured interest bearing account mutually acceptable to Seller and Purchaser, and to pay any interest earned on the Deposit to the party to which the Deposit ultimately is payable under the Purchase Agreement.  Purchaser expressly acknowledged that the full Deposit, and all interest earned thereon, was non-refundable to Purchaser except as otherwise set forth in the Purchase Agreement.

19.  Section 15.1 of the Purchase Agreement sets forth the consequences of a default by Purchaser under the Purchase Agreement.  Pursuant to Section 15.1, if Purchaser defaults, Seller is entitled as its sole remedy to terminate the Purchase Agreement and recover the Deposit as liquidated damages in full satisfaction of any claims against Purchaser.  In short, the Deposit and all interest earned on the Deposit must be paid to Seller if Purchaser defaults under the Purchase Agreement.

---

[1] Defeasance involves a process in which collateral for an existing loan is replaced by different collateral.

20. Seller and Purchaser expressly agreed in Section 15.1 that Seller's damages resulting from Purchaser's default would be difficult to determine and ascertain, that the amount of the Deposit is a fair estimate of those damages, and that such amount is not intended as a forfeiture or penalty but is intended to constitute liquidated damages. Further, Seller and Purchaser agreed that Seller possesses the right to recover its costs, fees, and expenses (including reasonable attorneys' fees and costs) pursuant to Section 15.3 of the Purchase Agreement in the event of a dispute concerning disposition of the Deposit.

21. Pursuant to a February 27, 2020, letter from PNC Real Estate, a true and correct copy of which is attached as **Exhibit A**, Seller was advised that payment of the Defeasance Costs deposit were due within three (3) business days of the date of the letter. Pursuant to Section 4.12 of the Purchase Agreement, Purchaser was required to timely pay the deposit for Defeasance Costs. The Defeasance Costs deposit payable by Purchaser totaled $40,000.00, and was comprised of a non-refundable Defeasance Fee of $25,000.00 and a $15,000.00 legal fee retainer.

22. Seller notified Purchaser that it needed to make the Defeasance Costs deposit in an email dated February 28, 2020 ("February 28 Email"), a true and correct copy of which is attached as **Exhibit B**.

23. Notwithstanding Seller's February 28 Email and multiple subsequent demands by Seller, Purchaser failed to pay the Defeasance Costs deposit.

24. Pursuant to a letter dated March 11, 2020 ("March 11 Letter"), Seller's counsel notified Purchaser and its counsel that Purchaser was in default under the Purchase Agreement because of Purchaser's failure to make the Defeasance Costs deposit as required by Section

7

4.12 of the Purchase Agreement. Seller also expressly reserved its rights to terminate the Purchase Agreement and recover the Deposit as liquidated damages pursuant to Section 15.1 of the Purchase Agreement. A true and correct copy of the March 11 Letter is attached as **Exhibit C**.

25. Notwithstanding Seller's repeated demands, including, without limitation, the March 11 Letter, Purchaser failed to cure its default regarding payment of the Defeasance Costs deposit.

26. Pursuant to a letter dated March 20, 2020 ("March 20 Letter"), Seller's counsel notified Purchaser, its counsel, and Escrow Company that Seller was terminating the Purchase Agreement pursuant to Section 15.1 as a result of Purchaser's failure make the Defeasance Costs deposit. Additionally, the March 20 Letter directed Escrow Company to immediately remit the Deposit of $1,900,000.00, plus interest thereon, to Seller, and provided Escrow Company wire instructions for payment of the Deposit and associated interest. A true and correct copy of the March 20 Letter is attached as **Exhibit D**.

27. Under Section 18.1(c) of the Purchase Agreement, Escrow Company must disburse the Deposit (and associated interest) to Seller in the event of a default by Purchaser. Because Purchaser defaulted under the Purchase Agreement, Seller is entitled to be paid the Deposit (and associated interest) under Sections 15.1 and 18.1(c) of the Purchase Agreement.

28. After receipt of the March 20 Letter, Purchaser objected to payment of the Deposit and associated interest to Seller by Escrow Company. Purchaser's objection apparently is premised on a baseless claim that Seller supposedly breached its representations and warranties under the Purchase Agreement that Purchaser raised for the first time after

Seller's March 11 Letter. However, notwithstanding Purchaser's after the fact and self-serving assertions to the contrary, Seller fully and faithfully performed all of its obligations under the Purchase Agreement. Indeed, for several months after signing the Original Agreement, Purchaser never raised any issue with Seller's performance until *after* Purchaser failed to pay the Defeasance Costs deposit.

29. Pursuant to Section 18(1)(d) of the Purchase Agreement, Escrow Company is prohibited from releasing the Deposit (and interest) to Seller if Purchaser timely objects to payment of the Deposit until Seller's entitlement to the Deposit is resolved by a court, by an arbitrator, or by a settlement between Seller and Purchaser. Thus, Escrow Company has not disbursed the Deposit and associated interest to Seller as of the date of filing this Complaint and, upon information and belief, continues to hold the Deposit and interest in escrow notwithstanding Seller's entitlement to receive the Deposit and interest as a result of Purchaser's default under the Purchase Agreement.

30. All conditions to maintenance of this action have occurred or been performed.

31. Seller has retained the undersigned counsel in connection with this action and is obligated to pay its counsel reasonable costs and attorneys' fees.

32. Seller is entitled to recover the reasonable attorneys' fees, court costs, and expert fees it incurs in connection with this action pursuant to Section 15.3 of the Purchase Agreement.

## COUNT I: BREACH OF CONTRACT

33. Seller realleges paragraphs 1-32 above as if fully set forth herein.

34. This is an action for breach of contract against Purchaser.

35. Purchaser's failure to make the Defeasance Costs deposit constitutes a material breach of, and default under, the Purchase Agreement.

36. Purchaser's material breach of, and default under, the Purchase Agreement has caused Seller to incur substantial damages.

37. As a result of Purchaser's breach of, and default under, the Purchase Agreement, Seller is entitled to recover as liquidated damages the Deposit of $1,900,000.00 held in escrow by Escrow Company, plus all interest earned on the Deposit, under Section 15.1 of the Purchase Agreement.

**COUNT II:  DECLARATORY JUDGMENT AND INJUCTIVE RELIEF**

38. Seller realleges paragraphs 1-32, and 35-37 above as if fully set forth herein.

39. This is an action for a declaratory judgment pursuant to 28 U.S.C. 2201(a), and associated injunctive relief, against Purchaser and Escrow Company.

40. A present, actual controversy exists between Seller, Purchaser, and Escrow Company concerning Seller's entitlement to be paid the Deposit, and all associated interest, by Escrow Company under Sections 15.1 and 18.1(c) of the Purchase Agreement.

41. Seller maintains that it is entitled to immediate payment of the Deposit and all associated interest pursuant to Sections 15.1 and 18.1(c) of the Purchase Agreement as a result of Purchaser's material breach of, and default under, the Purchase Agreement.  Purchaser disputes Seller's right to receive payment of the Deposit and associated interest from Escrow Company.  Seller currently is unsure of Escrow Company's position regarding payment of the Deposit and interest.

42. There is a bona fide, actual, present, and practical need for a declaration of the parties' rights, and the declaration will deal with a present, ascertained, or ascertainable state of facts or present controversy as to a state of facts, and the rights of the parties are dependent upon the facts and the law applicable to the facts.

43. All persons who have, or reasonably may have, an actual, present, adverse, and antagonistic interest in this matter are before the Court, and the relief sought is not merely the giving of legal advice by the Court or the answer to questions propounded from curiosity.

44. Additionally, Seller possesses a clear legal right to injunctive relief in this action.

45. Absent an award of injunctive relief, Seller will suffer irreparable harm. The injuries sustained by Seller are continuing and cannot be fully and completely compensated through mere monetary damages.

46. Moreover, Seller lacks a complete and adequate remedy at law. Due to the continuing nature of the harm incurred by Seller and the inability to fully measure and compensate Seller for the damages it has incurred and continues to incur as a result of Purchaser's material breach of, and default under, the Purchase Agreement and Escrow Company's failure to pay the Deposit and associated interest to Seller as a result of Purchaser's baseless objection to payment, mere monetary relief is insufficient to fully remedy Seller's harm and damages.

47. Finally, public interest favors injunctive relief because such relief will eliminate the continuing harm being incurred by Seller.

## REQUEST FOR RELIEF

**WHEREFORE,** Seller requests that the Court:

(a) Determine that Purchaser has materially breached, and defaulted under, the Purchase Agreement;

(b) Determine that Seller, pursuant to Section 15.1 of the Purchase Agreement, is entitled to recover the Deposit of $1,900,000.00, plus all interest earned on the Deposit through the date of full payment to Seller, as liquidated damages for Purchaser's material breach of, and default under, the Purchase Agreement;

(c) Determine that Escrow Company, pursuant to Sections 15.1 and 18.1(c) of the Purchase Agreement, is required to immediately pay Seller the Deposit of $1,900,000.00, plus all interest earned on the Deposit through the date of full payment to Seller, as a result of Purchaser's material breach of, and default under, the Purchase Agreement;

(d) Issue a mandatory injunction or other appropriate order requiring Escrow Company to immediately pay Seller the Deposit of $1,900,000.00, plus all interest earned on the Deposit through the date of full payment to Seller, pursuant to Sections 15.1 and 18.1(c) of the Purchase Agreement;

(e) Award Seller its reasonable attorneys' fees, court costs, and expert fees as against Purchaser pursuant to Section 15.3 of the Purchase Agreement; and

(f) Award Seller such other and further relief as the Court may deem appropriate.

Respectfully submitted,


/s/       *Guy P. McConnell*
Seth M. Schimmel (Applying for Northern District admission)
Florida Bar No. 986781
seth.schimmel@phelps.com
Guy P. McConnell
Florida Bar No. 472697
guy.mcconnell@phelps.com
**PHELPS DUNBAR LLP**
100 South Ashely Drive, Suite 2000
Tampa, Florida 33602
ph: (813) 472-7550; fax: (813) 472-7570

***ATTORNEY'S FOR PLAINTIFF RT-DESTIN ASSOCIATES, LLC***